Romolo Mazzocone v. Commissioner.
Mazzocone v. Commissioner
Docket No. 13455.
United States Tax Court
1948 Tax Ct. Memo LEXIS 184; 7 T.C.M. (CCH) 298; T.C.M. (RIA) 48084; May 20, 1948
*184 Rames J. Bucci, Esq., 1943 E. Passyunk Ave., Philadelphia, Pa., for the petitioner. William H. Best, Jr., Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax for the taxable years 1943, 1944 and 1945 in the respective amounts of $2,455.61, $1,905 and $1,903. The question presented is one of fact, to wit: the income realized by the petitioner during each of the taxable years 1942 to 1945, inclusive. It is necessary to determine income for 1942 by reason of the provisions of the Current Tax Payment Act. Findings of Fact The petitioner is an individual who resided during the taxable years 1942 to 1945, inclusive, at 2215 South 11th Street, Philadelphia, Pennsylvania. He filed individual income tax returns for those taxable years with the collector of internal revenue for the first district of Pennsylvania. The petitioner is of Italian ancestry and emigrated to the United States in 1922, becoming a naturalized citizen of this country in 1930 or 1931. In the year 1927, the petitioner established a baking business at 2215 South 11th Street, Philadelphia. He bought these premises *185 at a cost of $10,000 and sold them in December 1946 for $15,000. The consideration on this sale was paid to the petitioner, $8,000 in cash, which was deposited in the Central-Penn National Bank, Philadelphia, and the remainder of the purchase price was represented by a mortgage in the sum of $7,000. Petitioner kept no records or books of any kind to indicate the amount of income he realized from his baking business. He filed returns for the taxable years 1941 to 1945, inclusive, reporting income from no source other than his baking business. For each of the years, the amount of net income and the resulting tax, as reported, was as follows: Year
Net Income
Year
1941
$ 309.70
$ 0
1942
410.70
0
1943
1,449.60
23.94
1944
1,580.60
3.00
1945
1,670.60
30.00
The petitioner resided at his place of business. His family consisted of himself, his wife and daughter and his wife's parents, all of these individuals being dependent upon him. In February 1947, the office of the collector of internal revenue at Philadelphia, as the result of an "informer's letter" purporting to give information as to income realized by petitioner, assigned two deputy collectors, *186 Norman Neff and Nicholas A. Lacovara, to investigate the case. These deputy collectors, on February 7, 1947, called on the petitioner at 2215 South 11th Street, Philadelphia, and questioned petitioner with respect to his income received during the years 1942 to 1945, inclusive. They had already ascertained the fact that petitioner had a safe deposit box in the Roosevelt Bank in Philadelphia. Finding that petitioner kept no records of any kind to reflect his income, these deputy collectors proceeded to question petitioner in an effort to determine his net worth as of December 31, 1941 and December 31, 1945. The petitioner is not a man of education and does not speak finished English but understands the ordinary conversation in English with respect to everyday matters. One of the deputy collectors, Mr. Lacovara, was of Italian descent and spoke sufficient Italian to make himself understood in that language and to understand ordinary Italian conversation. In answer to the inquiries by Neff and Lacovara, petitioner advised them that on December 31, 1941 he possessed cash in his safe deposit box in the sum of $2,400, a truck worth $800 and real estate which had cost him $10,000, or *187 a total of $13,200. He further advised that the real estate was encumbered at that time with a mortgage for $3,800, leaving him a net worth on that date of $9,400. As of the date, December 31, 1945, he advised them that he had a net worth represented by $15,000 in his safe deposit box in the Roosevelt Bank, savings in cash at his home of $9,000, additional $3,000 in cash at home which he had realized from playing the "numbers", a truck worth $800 and the real estate constituting his place of business, which he had purchased for $10,000 and which as of that date had no encumbrance. He further advised that he had no liabilities. These items totaled $37,800 in net worth as of this latter date. The several assets and liabilities, as detailed above, were entered by the deputy collectors upon a "Statement of Financial Condition". This statement was then explained to the petitioner and was signed and sworn to by him. Petitioner's gross income for each of the four years in question was then determined upon a net worth basis by taking the total increase in assets over this term and increasing it by the amount of $2,000 each year, estimated as the minimum amount of the cost to petitioner *188 in the support of his family. The resulting figure was pro rated equally over the four years, giving rise to the deficiencies here in issue. Opinion The evidence adduced on the hearing is directed almost wholly to an attempt to impeach the accuracy of the computation made by the two deputy collectors and their report of the information given them by the petitioner. We have no evidence establishing affirmatively a specific amount of income for any one of the four years. Petitioner admits that he did have $3,000 winnings on the "numbers" and this was not included in his return. He also admits that he loaned $9,000 in cash to a friend in 1945, this being repaid to him in August 1946. This was before the sale of his real estate and so none of this money represents the proceeds of that sale. He does not dispute the correctness of the items entered on the "Statement of Financial Condition" making up his net worth as of December 31, 1941. The main item of dispute appears to be the correctness of the item of $15,000, reported as in his safe deposit box on December 31, 1945. Petitioner says that he did not have this amount in the box on that date. The evidence to support this statement *189 is his own testimony that on the day following the visit to him by the revenue agents, which was more than a year subsequent to December 31, 1945, he went to his safe deposit box and only found $700 in cash. This testimony does not, in fact, contradict his statement to the agents that there was $15,000 in cash in the deposit box at the close of 1945. In fact, it can be given little, if any, weight in view of the testimony of the petitioner that he does not know and can not say how much money was in the safe deposit box on that date. As to the $2,000 estimate made as the cost to petitioner of the support of his family in each of the five years, petitioner produces no proof of the actual cost. His testimony is that he did not know what it cost him. In the absence of books and records to determine income such determination may be made upon an increase in net worth basis. Pottash Brothers, 12 B.T.A. 190; affd., 50 Fed. (2d) 317 and 50 Fed. (2d) 321; O'Dwyer v. Commissioner, 110 Fed. (2d) 925. That is the situation here and upon this basis the respondent has determined the contested deficiencies. The burden is upon the petitioner *190 to show error in that determination and the proof falls far short of that sufficient to determine it to be erroneous. Petitioner's own testimony establishes affirmatively that over the period here in question he has received substantial income in addition to that reported by him. His testimony that, aside from his winning of $3,000 on the "numbers", he had an income of from $40 to $50 a week from the operation of his bakery is manifestly untrue. Such an income would barely suffice to maintain his family. It would be impossible for him with this income, in our opinion, to accumulate sufficient to pay off during that period a mortgage of $3,800 and still leave accumulations, which he admits, sufficient to permit him to lend $9,000 in cash to a friend. On this record the conclusion is unavoidable that petitioner has failed utterly to overturn the correctness of the determination as made by the respondent. We so hold. Decision will be entered for the respondent.